**[ORAL ARGUMENT NOT YET SCHEDULED]**
**No. 16-5299**

_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

STEVEN C. DRIELAK

Appellant,

v.

E. SCOTT PRUITT, Administrator

Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
District Court Case No. 1:14-cv-01088-CRC

_____

**BRIEF FOR APPELLANT STEVEN C. DRIELAK**
_____

Morris E. Fischer, Esq. Bar # 49804
Morris E. Fischer, LLC
1400 Spring Street, Suite 350
Silver Spring, Maryland 20910
Phone: (301) 328-7631
Fax: (301) 328-7638
morris@mfischerlaw.com
*Counsel for Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES PURSUANT TO RULE 28(a)(1)

Pursuant to D.C. Circuit Rule 28(a)(1), Appellant Steven C. Drielak hereby certifies as follows:

### A. Parties and Amici:

The Appellant is Steven C. Drielak, who was the Plaintiff in the District Court. The Appellee is Regina McCarthy, Administrator of the Environmental Protection Agency, who was the Defendant in the District Court. There was no amicus in the District Court. There is no amicus in this Court.

### B. Ruling Under Review:

The ruling under review is the Order and Memorandum Opinion entered on September 19, 2016 of the Honorable Judge Christopher R. Cooper granting the Defendant's Motion for Summary Judgment.

### C. Related Cases:

The case on review is not and has not been before this, or any other court. Counsel is not aware of any related cases currently pending or in any other court within the meaning of D.C. Circuit Rule 28(a)(1)(C).

/s/ Morris E. Fischer
Morris E. Fischer

July 3, 2017

i

# TABLE OF CONTENTS

**Contents**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES
PURSUANT TO RULE 28(a)(1).................................................................... i

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ........................................................................... iii

GLOSSARY......................................................................................................v

STATEMENT OF APPELLATE JURISDICTION ...................................... 1

STANDARDS OF APPELLATE REVIEW ................................................ 2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................... 3

STATUTES AND REGULATIONS ........................................................... 4

STATEMENT OF THE CASE...................................................................... 5

   A.  2011 - 2012 Non-Selections ................................................................ 6

   B.  2012 MOU, OECA Briefing Paper, Moving PSD to the Office of OIG ......... 7

   C.  2014 Reassignments In Retaliation for Prior Protected EEOC Activity .......11

SUMMARY OF THE ARGUMENT ......................................................... 13

STANDARD OF REVIEW .......................................................................... 17

ARGUMENT .................................................................................................. 17

   I.  The District Court Erred When It Held Appellant Did Not Suffer An Adverse
Employment Action ............................................................................... 17

   II.  The District Court Erred When It Found That The Appellant Had Not Made
Out a Prima Facie Case of Retaliation Because The Defendants' 2014 Acts Were
Not Caused By His Protected Activity ................................................. 24

   III.  The District Court Erred In Finding That The Appellant Had Failed to
Exhaust His Administrative Remedies Under Title VII....................... 28

CONCLUSION .............................................................................................. 32

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                       **Page(s)**

*Aceto v. England*, 328 F.Supp.2d 1 (D.D.C. 2004) ...................................................15

*Aceto v. England*, 328 F.Supp.2d 1, 5 (D.D.C. 2004) ...............................................5

*Cheek v. W. & S. Life Ins., Co.*, 31 F.3d 497, 500 (7th Cir. 1994) ...........................5

*Clay v. Howard Univ.*, 128 F.Supp.3d 22, 30 (D.D.C. 2015) ............................4, 17

*Clay v. Howard Univ.*, 128 F.Supp.3d 22, 31 (D.D.C. 2015) ............... 4, 17, 18, 22

*Cones v. Shalala*, 199 F.3d 512, 525 (D.C. Cir. 2000).......................................4, 16

*Estate of Col–Monge v. Inner Peace Movement*, 524 F.3d 1341, 1346 (D.C.Cir. 2008) ...........................................................................................................2, 15

*Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) .................5

*Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015) ..... 4, 24, 26

*Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) ............................ 4, 16, 17

*Johnson v. Gonzales*, 479 F.Supp.2d 55 (D.D.C. 2007).........................................15

*Johnson v. Gonzales*, 479 F.Supp.2d 55, 57, 59 (D.D.C. 2007)................. 15, 28, 29

*McCready v.Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006)...........................................2

*McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) ....................................5

*Mokhtar v. Kerry*, 83 F.Supp.3d 49, 70 (D.D.C. 2015). ...............................................4

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ...........................27

*Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.Cir. 1995) ........................................5

*Stewart v. Aschroft*, 352 F.3d 422, 425 (D.C. Cir. 2003) .........................................5

**Federal Statutes**                                                                          **Page(s)**

42 U.S.C. [§] 2000e-16 ...............................................................................................4

28 U.S.C. § 1291 ....................................................................................................1, 4

28 U.S.C. § 1331 ....................................................................................................1, 4

29 C.F.R. § 1614.105(a)(1) .......................................................................................4

29 U.S.C. § 621 .....................................................................................................1, 5

29 U.S.C. § 623(f)(1) ...............................................................................................4

42 U.S.C. § 2000e ....................................................................................................1

Rules

Fed. R. Civ. P. 56 ……………………………………………………………… 3

# GLOSSARY

| | |
|---|---|
| **CID** | Criminal Investigation Division |
| **EPA** | Environmental Protection Agency |
| **FOP** | Field Operations Program |
| **MOU** | Memorandum of Understanding |
| **NCERT** | National Criminal Enforcement Response Team |
| **OCEFT** | Office of Criminal Enforcement Forensics and Training |
| **OECA** | Office of Criminal Enforcement |
| **PARS** | Performance Appraisal Review |
| **PSD** | Performance Appraisal Review |

## STATEMENT OF APPELLATE JURISDICTION

This case is based on claims of age discrimination and retaliation brought by Plaintiff Steven C. Drielak, ("Appellant" or "Plaintiff") against his employer Regina McCarthy, Administrator of the Environmental Protection Agency ("Appellee" or "Defendant"). The Complaint was filed in the United States District Court for the District of Columbia on June 27, 2014. The District Court had subject matter for the complaint pursuant to 28 U.S.C. § 1331 for claims arising under federal law, i.e., the Age Discrimination Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq. and 42 U.S.C. § 2000e-3(a). Appellant, Steven C. Drielak, filed this action under The Age Discrimination Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq. and 42 U.S.C. § 2000e-3(a). The District Court granted the motion of Defendant-Appellee for Summary Judgment. On October 19, 2016, Appellant timely filed a Notice of Appeal from the Final Order of the District Court granting Summary Judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## <u>STANDARDS OF APPELLATE REVIEW</u>

This Court reviews summary judgment de novo, applying the same standard of review as that of the District Court.  *Estate of Col–Monge v. Inner Peace Movement*, 524 F.3d 1341, 1346 (D.C.Cir. 2008).  Summary judgment is appropriate only where there is "no genuine issue as to any material fact" and, viewing the evidence in the light most favorable to the nonmoving party, "the moving party is entitled to a judgment as a matter of law."  *McCready v.Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

At this juncture, Appellant raises the following issues in this appeal:

(1)  Under the statutory framework prescribed by Fed. R. Civ. P. 56, whether the district court erred by granting Appellee's Motion for Summary Judgment, on the ground that Appellant had not made a *prima facie* case for age discrimination, specifically that Appellant cannot satisfy prong three (3) of an ADEA claim that he suffered an adverse employment action.

(2)  Under the statutory framework prescribed by Fed. R. Civ. P. 56, whether the district court erred by granting Appellee's Motion for Summary Judgment, on the ground that there was no "causal connection" between his protected activity and the Defendant's later adverse actions, thus not satisfying the third prong of his Retaliation claim.

(3) Under the statutory framework prescribed by Fed. R. Civ. P. 56, whether the district court erred by granting Appellee's Motion for Summary Judgment, on the ground that Appellant failed to administratively exhaust his non-selection claims.

## STATUTES AND REGULATIONS

Appellant relies on the following statutes and regulations:  28 U.S.C. § 1291;

28 U.S.C. § 1331;   42 U.S.C. [§] 2000e-16;  29 C.F.R. § 1614.105(a)(1) and (2);

29 U.S.C. § 623(f)(1);  42 U.S.C. §2000e-3 (2017).

Title VII of the Civil Rights Act requires that an employee bringing a claim

be sufficiently "aggrieved."   42 U.S.C. [§] 2000e-16.  This D.C. Circuit has held,

"so long as a plaintiff meets the statutory requirement of being 'aggrieved' by an

employer's action, 42 U.S.C. §2000e-16(c) (2000), we do not categorically reject a

particular personnel action as nonadverse simply because it does not fall into a

cognizable type."  *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (citing

*Cones v. Shalala*, 199 F.3d 512, 525 (D.C. Cir. 2000).  Further, a lateral transfer or

reassignment with significantly different responsibilities can constitute an adverse

action.  *Clay v. Howard Univ*., 128 F.Supp.3d 22, 30 (D.D.C. 2015).

Further, "To prove unlawful retaliation, a plaintiff must show: (1) that he

opposed a practice made unlawful by Title VII; (2) that the employer took a

materially adverse action against him; and (3) that the employer took the action

'because' the employee opposed the practice."[1] *Harris v. D.C. Water & Sewer*

---

[1] Title VII protects employees who have opposed "unlawful employment practices" from
employer retaliation. 42 U.S.C. § 2000e-3(a).  Retaliation claims are assessed using the
McDonnel Douglas framework which applies to both Title VII and ADEA claims.  *Mokhtar v.
Kerry*, 83 F.Supp.3d 49, 70 (D.D.C. 2015).

4

*Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012)).

Under C.F.R. § 1614.105(a)(1), before filing suit against a federal employer under Title VII or the Rehabilitation Act, a plaintiff must exhaust his administrative remedies by contacting an Equal Employment Opportunity ("EEO") counselor within 45 days of the matter alleged to be discriminatory or the effective date of an alleged discriminatory personnel action.[2] *Aceto v. England*, 328 F.Supp.2d 1, 5 (D.D.C. 2004) (citing C.F.R. § 1614.105(a)(1)). The limitations period begins to run when the employee "knew, or should have known, about the alleged discriminatory action." *Stewart v. Aschroft*, 352 F.3d 422, 425 (D.C. Cir. 2003). The administrative exhaustion requirement "should not be construed to place a heavy technical burden on 'individuals untrained in negotiating procedural labryinths." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.Cir. 1995) (quoting *Cheek v. W. & S. Life Ins., Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).

## STATEMENT OF THE CASE

Appellant, Steven C. Drielak (Mr. Drielak), filed this case under the Age Discrimination Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq.. ECF Doc.1, ECF Doc. 9. Appellant claimed that the Appellee discriminated

---

[2] As explained under 29 C.F.R. 1614(a)(2)(b), if a complainant chooses to proceed on an ADEA claim through the EEOC, complainant's claims must be exhausted unless they elect to file a lawsuit.

5

against him on the basis of age and reprisal.  Id.  Appellant, at the time of his complaint, was a 61 year old white male.  ECF Doc. 1 at ¶ 6.  He finished his career at the EPA as the Director, Office of Criminal Enforcement ("OECA"), of the Forensics and Training's ("OCEFT") Field Operations Program.  ECF 1 ¶ 11.

When he was made the Director of the Field Operations Program ("FOP") in November 2010, this was an effective demotion.  ECF24-3 at 1-2. Mr. Drielak's FOP duties included managing the National Criminal Enforcement Response Team ("NCERT") team and the Protection Services Detail ("PSD") staff.  Id. at 3-4. Mr. Henry Barnett ("Mr. Barnett") became OCEFT Director in July 2011 while Mr. Matthew Morrison ("Mr. Morrison") became Deputy Director of OCEFT in January 2012.  ECF 24-4 at 2; ECF 24-5 at 2.  Both Mr. Barnett and Mr. Morrison are younger than Mr. Drielak. Id.

From 2011 until 2014, the Appellant was the subject of multiple discriminatory acts based upon his age and retaliation.

## A. 2011 - 2012 Non-Selections

From 2010 to 2014, Plaintiff was not selected for seven acting positions – temporary EPA/OCEFT promotions, three permanent EPA/OCEFT promotional positions; two permanent EPA promotional positions, including the (a) Office of Homeland Security Associate Administrator, (b) Inspector General's Office

Assistant IG.  See ECF 24-3 at 14 – 15. Plaintiff was the oldest candidate for each position. Id. The selectees were not as qualified as Mr. Drielak. Id.

During 2010 to 2012, the Agency selected a younger candidate over Mr. Drielak for OCEFT acting Deputy Director on at least seven ("7") occasions. ECF 12 at 3.  In August of 2012, the Appellant began to suspect that he was being discriminated against on the basis of age.  ECF 24-3 at 10.  Accordingly, on August 22, 2012, Mr. Drielak contacted an EEO Counselor to complain of age discrimination.  ECF 24-1 at 2.  Regarding the selection of the permanent Criminal Investigation Division ("CID") Director's position, the Appellant was informed that other candidates who were approaching retirement age would not be supported by Mr. Morrison, the lead member of the position interview panel and Mr. Drielak's immediate supervisor. ECF 24-3 at 10.  The Appellant asserts that upon learning this information, he reasonably surmised that the non-selections were due to his age.  See ECF 24-3 at 8.

## B. 2012 MOU, OECA Briefing Paper, Moving PSD to the Office of OIG

On October 17, 2012, Appellant was informed that a Memorandum of Understanding ("MOU") had been signed that would alter his position drastically. ECF 24-3 at 5.  The MOU allowed for a Special Agent to supplement the Protection Services Detail ("PSD") on a need basis.  ECF 24-3 at 6.  This Special Agent was under the age of 40, was previously subordinate to Appellant, and the

7

Appellant would not have allowed this Special Agent to perform such tasks because of his previous disciplinary and performance record deficiencies.  Id.  In effect, the MOU allowed the Appellee to by-pass the Appellant and his previously conceived operation plan, which provided supplemental support to the PSD with properly trained officers from within Appellant's Field Operations Program ("FOP"). Id.  Making matters worse, as national program manager for the PSD, Appellant was still responsible for providing protection services, yet he no longer had decision making authority regarding the specific personnel utilized to protect the EPA Administrator.  ECF 24-3 at 6. Mr. Drielak was excluded from all meetings and discussions regarding the MOU. Id. at Affidavit A, pg. 4-5 & at Affidavit N, pg. 2 ("Sam Wiggins Affidavit"); see also Exhibit 3; "Wiggins Email."

Further, in October of 2012, in response to the Appellant's order to prepare the National Criminal Evidence Recovery Team ("NCERT") for possible support operations, Deputy Director Morrison sent an email to all of the Appellant's younger colleagues and proceeded to undermine the Appellant.  ECF 24-3 at 10. The email requested that OCEFT Assistant Director Beck Barnes take the lead on drafting a briefing paper that would be used to brief the OECA Assistant Administrator on both the emergency response and force protection, which Appellant was in charge of for the NCERT functions.  Id. at 10-11, 16.  The

Appellant was excluded from this email.  Id. at 11.  He was excluded from multiple

meetings regarding NCERT and its national role.  Id. On September 9, 2012, Ted

Stanich, Mr. Drielak's younger subordinate, told the Appellant that he was "told

specifically by Matt Morrison not to share the NCERT roles and responsibilities

document with [the Appellant.]"  ECF 24-3 at 11.  This briefing paper, that

addressed the role of the Appellant's program, was not shown to the Appellant

until approximately a month after his colleagues began drafting it.  This was on

September 19, 2012, after the Appellant informed Henry Barnett of his EEOC

complaint.  ECF 24-3 at 11.

The Appellant's colleagues were to present the briefing paper to Assistant

OCEFT Administrator Cynthia Giles.  ECF 24-3 at 16.  Cynthia Giles knew the

Appellant was the National Program Manager for the NCERT response team.  Id.

The Appellant had previously briefed Ms. Giles on his team's purpose and

capabilities in the spring of 2009.  Id.  This exclusion incident limited the

Appellant's ability to be an effective OCEFT senior manager because it augmented

his isolation from the decision making process regarding the national program, for

which he was responsible.  Id. at 16-17.

On September 20, 2012, Ted Stanich, the then Acting Criminal

Investigations Director ("CID") informed Mr. Drielak that Mr. Morrison proposed

to move the PSD to the Office of Inspector General ("OIG"), which would transfer

a portion of Appellant's national program manager duties.  ECF 24-3 at 8.  Mr.
Stanich was Mr. Drielak's younger subordinate. Id. Since Mr. Drielak was the
national program manager for the Protection Services Detail, which comprised
approximately 50% of the Field Operations Program personnel and budget
requirements, removal of this program from Appellant's management oversight
would result in an approximate 50% reduction in Appellant's personnel and
budgetary allocation. Id.

Finally, on February 13, 2013, the Appellant had a discussion with his
supervisors Mr. Morrison and Mr. Barnett.  ECF 24-3 at 27.  Mr. Morrison started
the meeting by producing an organizational chart, showing it to the Appellant, and
asking the Appellant where he thought he fit in.  ECF 24-3 at 27.  The chart
showed positions for all of the Appellant's younger employees, but his position
was removed.  Id.  The Appellant replied that he did not fit into the new structure
and that they took away his position and responsibilities and gave them to other
OCEFT managers.  ECF 24-3 at 27.  The Appellant told his supervisors that no
other OCEFT permanent Director was being demoted by the proposed OCEFT
reorganization.  Id.  The Appellant asked Mr. Morrison and Mr. Barnett to provide
him with the name of one other Director who was being demoted.  Id.  Mr.
Morrison and Mr. Barnett could not answer this question and they sat in silence.

**C. 2014 Reassignments In Retaliation for Prior Protected EEOC Activity**

On March 5, 2014, Mr. Barnett informed Mr. Drielak that four Special

Agents under his supervision would be reassigned to the Criminal Investigations

Division ("CID").  ECF 24-8 at 5.  Six months prior, the Appellant's supervisors

took part in Appellant's EEO investigation on September, 2013.  ECF 24-4; ECF

24-5.  The EEO investigator took Mr. Barnett's affidavit on September 5, 2013 and

Mr. Morrison's on September 6, 2013.  ECF 24-4; ECF 24-5.  In his affidavit, Mr.

Barnett admits that he was completely unaware of Appellant's harassment and or

hostile work environment claims.  ECF 24-5 at 19-20.  Mr. Barnett had not even

heard of these allegations until September, 2013.

Regarding the reassignments, the Appellee states they were necessary

because the CID was understaffed.  Therefore, agents under Mr. Drielak's

supervision were being transferred to other supervisors so they could conduct

criminal investigations.

The briefing paper to Assistant OCEFT Administrator Cynthia Giles, which

was eventually shown to Appellant on September 19, 2012, explains that agents

under the Appellant's command were already beginning to "take on casework as

well," casework meaning criminal investigations. ECF 24-11 at 3.  Mr. Barnett

admits that although the four agents were going to be transferred to the CID full

time, they still had ancillary duties, such as being members of the National

Criminal Enforcement Response Team ("NCERT"). The Appellant was in charge of the NCERT unit. ECF 24-8 at 6. Additionally, the briefing specifically states that "FOP and CID members of NCERT [have] assisted in executing more than 25 criminal search warrants in FY -11/12 in support of significant cases." ECF 24-11 at 3. The agents, under the Appellant's supervision, were already performing criminal investigations.

Further, one of the transferred special agents, Andrea Abat, testified that their duties did not substantially change because of the transfer. ECF 25-7. Andrea Abat specifically testified that Mr. Barnett told her that her duties would not substantially change. ECF 25-7. Her supervisor was the only change. Id.

On September 19, 2016, the District Court granted the Appellee's Motion for Summary Judgment. ECF 33. Appellant filed the Notice of Appeal on October 19, 2016. ECF 34. On December 8, 2016, the Appellee filed its Motion for Summary Affirmance. Appellee Motion for Summary Affirmance. On January 9, 2017, the Appellant filed his Motion in Opposition to Summary Affirmance. Appellant Opps. To Summary Affirmance. On May 5, 2017, Judges Henderson, Rogers, and Griffith denied the Motion for Summary Affirmance. Summary Affirmance Denial.

## SUMMARY OF THE ARGUMENT

The D.C. Circuit, the Fourth Circuit, and the District Court for the District of Columbia have held respectively that; "a lateral transfer or reassignment with significantly different responsibilities," loss of job responsibilities and reduced opportunities for promotion, and when a plaintiff "did not have responsibilities commensurate with her previous position" so that she was "mired in professional purgatory" were all adverse employment actions. *Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006); *Boone v. Goldin*, 178 F.3d 253 (4th Cir. 1999); *Clay v. Howard Univ.*, 128 F.Supp.3d 22, 31 (D.D.C. 2015). Here, the facts are similar to those of Holcomb and Clay where the courts found that the defendants' actions were sufficient to meet the statutory requirement that a plaintiff is an "aggrieved" person. Here, technically, the Appellant's responsibilities and duties stayed the same, but a Memorandum of Understanding ("MOU") produced by his superiors allowed for an agent to provide services for the Protection Services Detail ("PSD") on an "as needed" basis. The Appellant had previously devised operations plans for the PSD that used properly trained agents. The MOU by-passed the Appellant and his operations plan, even though he was responsible for the PSD.

Further, the Appellant's promotional opportunities were curtailed when he was excluded from contributing to a briefing paper. The paper and subsequent presentation and discussions were for Assistant OCEFT Administrator Cynthia

Giles.  Ms. Giles knew who the Appellant was and she knew about his important role in the agency.  Appellant's absence from the process casted doubt on his competency and excluded him from the opportunity to impress senior executive officers, therefore impacting on his opportunities for promotion.  Therefore, the Agency's actions were sufficiently adverse and the Appellant qualifies as an "aggrieved person."

Continuing, this Circuit has found that when a defendant took retaliatory actions five months after a plaintiff's protected EEO activity, and where the plaintiff set forth sufficient evidence to show that the defendant's reasons for the acts were mere pretext, in such a scenario the plaintiff had sufficiently set forth facts to surpass summary judgment.  *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65 (D.C. Cir. 2015).  Here, the District Court used a 15 month timeframe for the time in between protected activity and the retaliatory acts.  However, as set forth below, the time frame should only be six months.  Further, the Appellant can show that the Appellee's proffered reasons for the retaliatory acts are mere pretext because the agents that were reassigned from the Appellant's NCERT/FOP team to the CID continued on in the exact same roles as they had been under the Appellant. As part of their roles under the Appellant, the agents performed criminal investigations supporting the CID.  When the agents were moved to the CID, they would perform tasks related to the NCERT/FOP mission as they had always done

14

while working under the Appellant. Therefore, the reassignments were

unnecessary to achieve the Appellee's proclaimed goal of curing the CID's

understaffing issues because the agents were already performing investigations for

the CID before the reassignment.

Finally, relevant case law finds that a plaintiff's claims may be equitably

tolled if the plaintiff did not have a reasonable suspicion that they were being

discriminated against. *Aceto v. England*, 328 F.Supp.2d 1 (D.D.C. 2004); *Johnson*

*v. Gonzales*, 479 F.Supp.2d 55 (D.D.C. 2007). Unlike these cases where the courts

found that plaintiff's knew or had reason to know that they were being

discriminated against, here, the Appellant did not have a reasonable suspicion that

he was, based upon his age, not selected for multiple promotions until late August

and early September 2012. In fact, Mr. Drielak had made several attempts to

determine from his supervisors the reason why he was not being considered for

promotional opportunities. His inquiries were met with mute responses. On May

2nd, 2011, Mr. Drielak sent an email to the Acting OCEFT Director Howard Cantor

where he requested an opportunity to serve OCEFT in an "Acting" Senior

Executive Service (SES) role. Mr. Drielak stated that the OECA/Office of

Administration and Policy Deputy Director Badalamente, the National

Enforcement Investigations Center (NEIC) Deputy Director Norris and CID

Deputy Director Parker had all been afforded an opportunity to gain this valuable

experience while serving in an Acting SES position and that he, as an OCEFT

Division Director, would like to be afforded the same opportunity. Acting OCEFT

Director Cantor appeared in Mr. Drielak's office shortly after receiving the email.

He indicated to Mr. Drielak that he would not be allowed to serve in the Acting

SES role. Mr. Drielak asked him for a specific reason as to why he was being

denied this promotional opportunity. He refused to supply Mr. Drielak' with an

answer to his question. In addition, during his October 31, 2011 performance

review with OCEFT, Director Barnett, Mr. Drielak requested that he be allowed to

serve in the "Acting" role for any future open SES position. He also indicated that

he intended on applying for any permanent SES position when announced and that

the experience gained while working in the Acting SES role would be beneficial to

him during the application process. Mr. Drielak specifically stated that he wanted

the opportunity to work in the position of Acting CID Director to gain experience

and to assist in meeting the qualifications for the CID Director permanent position

and any other future permanent promotional position. Mr. Drielak also informed

him of the May 2, 2011 email that he had sent to Acting Director Howard Cantor

and his subsequent lack of response regarding this issue. Director Barnett sat in

silence and provided no response to Mr. Drielak's concerns. This puts the

Appellant's contact with the EEO counselor within the 45 day time period required

by law.

16

In Summary the District Court erred in three respects.  First, it did not consider certain factual aspects of this case and case law dictates that the Appellee's actions constitute "adverse actions" under Title VII.  Second, the Appellee's retaliatory actions were causally connected to the Appellant's protected EEO activity.  Third, the Appellant exhausted his non-selection claims, this Court should reverse the District Court's judgment.

### STANDARD OF REVIEW

This Court reviews summary judgment de novo, applying the same standard of review as that of the District Court.  *Estate of Col–Monge v. Inner Peace Movement*, 524 F.3d 1341, 1346 (D.C.Cir. 2008).  Summary judgment is appropriate only where there is "no genuine issue as to any material fact" and, viewing the evidence in the light most favorable to the nonmoving party, "the moving party is entitled to a judgment as a matter of law."  *McCready v.Nicholson*, 465 F.Supp.3d 1, 7 (D.C.Cir. 2006).

### ARGUMENT

### I.    The District Court Erred When It Held Appellant Did Not Suffer An Adverse Employment Action

The District Court found that Mr. Drielak failed to make out a *prima facie* case for age discrimination because he did not suffer any adverse employment

actions. The District Court cited *Holcomb*, *Forkkio*, and various other cases from outside the D.C. Circuit to support this conclusion. ECF 32 at 13-14; *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006). The District Court ignored certain aspects of this area of case law that support Appellant's claims and it ignored factual aspects of Appellant's case that support the claim that the Defendant took adverse actions against him. Id.

This Circuit has held, "so long as a plaintiff meets the statutory requirement of being 'aggrieved' by an employer's action, 42 U.S.C. §2000e-16(c) (2000), we do not categorically reject a particular personnel action as nonadverse simply because it does not fall into a cognizable type." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (citing *Cones v. Shalala*, 199 F.3d 512, 525 (D.C. Cir. 2000). Further, it has been held that a lateral transfer or reassignment with significantly different responsibilities can constitute an adverse action. *Clay v. Howard Univ.*, 128 F.Supp.3d 22, 30 (D.D.C. 2015).

For example, in *Clay v. Howard*, the D.C. District Court found that a defendant took materially adverse actions against a plaintiff when she was moved to a new position that "had no defined responsibilities, and certainly did not have responsibilities commensurate with her previous position." *Clay v. Howard Univ.*, 128 F.Supp.3d 22, 31 (D.D.C. 2015). The Court looked to *Holcomb* for the reasoning that plaintiffs "mired in professional purgatory," which the plaintiff in

18

*Clay* was, have sufficiently plead a materially adverse action. *Clay*, 128 F.Supp.3d at 31. The Court also looked to the fact that the new position required several areas of knowledge that the plaintiff did not have, and that the defendant was not going to train her on so she could perform her duties. Id. at 31. Therefore, the District Court ruled that the plaintiff had sufficiently plead facts that would constitute an adverse action.

Additionally, in *Holcomb*, the plaintiff suffered an "extraordinary reduction in responsibilities that persisted for years." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006). The District Court ruled that the plaintiff had met her burden of sufficiently pleading facts to support a finding that the defendant's actions constituted a materially adverse employment action. *Holcomb*, 433 F.3d at 903. The Court reasoned that the plaintiff's duties declined dramatically in both quantity and quality because she was performing Grade 5 position level tasks, yet she was a grade 11, and that this persisted for two years. *Id.* at 902-903. Therefore, based upon these facts, the Court found that the plaintiff sufficiently met her burden to show that her employer took materially adverse actions against her.

Finally, in *Boone v. Goldin*, the plaintiff alleged that her new role in NASA's wind tunnel was an adverse employment action. *Boone v. Goldin*, 178 F.3d 253 (4th Cir. 1999). The Fourth Circuit ruled that the defendant's actions were not materially adverse. *Boone*, 178 F.3d at 253. The Fourth Circuit reasoned

19

that NASA's actions were not materially adverse because the plaintiff's reassignment did not cause any reduction in the level of her job responsibilities, the plaintiff maintained her salary, and the defendant stated that the reassignment would better position the plaintiff for future promotions as the wind tunnel project was important to NASA's goals. *Boone*, 178 F.3d at 253. Importantly, the Fourth Circuit specifically outlined loss of job responsibilities and reduced opportunities for promotion as typical requirements for satisfying the adverse action prong of a discrimination claim. Id. at 253.

Here, very similar to *Clay*, Appellant was mired in professional purgatory and the District Court overlooked essential facts that lead one to this conclusion. While it is true that, according to official agency documents, the Appellant's responsibilities did not technically change, but in practice the quantity and quality of his duties had been reduced drastically.

On October 17, 2012, Appellant was informed that a Memorandum of Understanding ("MOU") had been signed that would alter his position drastically. ECF 24-3 at 5. The Appellant was responsible for choosing the agents assigned to the Protection Services Detail ("PSD"). Id. at 5-6. However, the MOU allowed for a Special Agent to supply protective services to the PSD on a need basis, outside of Appellant's direction. ECF 24-3 at 6. This Special Agent chosen was under the age of 40, was previously subordinate to Appellant, and the Appellant

20

would not have allowed this Special Agent to perform such tasks because of his previous disciplinary and performance record deficiencies.  Id.  In effect, the MOU allowed the Appellee to by-pass the Appellant and his previously conceived operation plan, which provided supplemental support to the PSD with properly trained officers from within Appellant's Field Operations Program ("FOP").  Id. Making matters worse, Appellant was still responsible, as National Program Manager for the PSD, for providing protection services, yet he no longer had decision making authority regarding the specific personnel utilized to protect the EPA Administrator.  ECF 24-3 at 6.  Similar to *Clay*, the MOU saddled the Appellant with a new position where he "certainly did not have responsibilities commensurate with [his] previous position."  *Clay*, 128 F.Supp.3d at 31.

Similar to *Holcomb*, where the plaintiff had her responsibilities reduced drastically despite the fact that she was technically employed on the same grade-level, here, on August 30th, 2012, in response to Appellant's order to prepare the National Criminal Evidence Recovery Team ("NCERT") for possible support operations, Deputy Director Morrison sent an email to all of the Appellant's younger colleagues and proceeded to undermine the Appellant.  ECF 24-3 at 10. The email requested that OCEFT Assistant Director Beck Barnes take the lead on drafting a briefing paper that would be used to brief the OECA Assistant Administrator on both the emergency response and *force protection*. Appellant was

21

responsible for the latter.  Id. at 10-11, 16.  The Appellant was excluded from this email.  He was excluded from multiple meetings regarding NCERT and its national role.  ECF 24-3 at 11.  On September 9, 2012, Ted Stanich told the Appellant that he was "told specifically by Matt Morrison not to share the NCERT roles and responsibilities document with [him.]"  ECF 24-3 at 11.  The document that addressed the role of the Appellant's program was not shown to the Appellant until approximately a month after his colleagues began drafting it.  Id. at 11.  This was on September 19, 2012, after the Appellant informed Matt Morrison of his EEOC complaint.  Id. at 11.  This is very similar to *Holcomb* because Appellant's duties were drastically reduced to the point where he had essentially no role in the process, yet he was technically employed in the same position.

In addition, the incident regarding the MOU is comparable to *Holcomb* because the Appellant was technically in the same position he had always served in, but his role was drastically reduced when an MOU allowed a Special Agent to provide protection services to the PSD, despite the fact that the Appellant did not plan for, nor had he approved the use of this Special Agent for the PSD.

Moreover, unlike in *Boone*, here, the Appellant's responsibilities were reduced and his potential for being promoted was severely impacted by being excluded from the creation of the OCEFT briefing paper. ECF 24-3 at 16-17. Neither of these factors were present in *Boone.  See Boone*, 178 F.3d at 253.  The

Appellant's colleagues were to present the briefing paper to Assistant OCEFT

Administrator Cynthia Giles.  Cynthia Giles knew the Appellant was the National

Program Manager for the NCERT response team.  ECF 24-3 at 16.  The Appellant

had previously briefed Ms. Giles on his team's purpose and capabilities in the

spring of 2009.  Id.  The Appellant's exclusion from the briefing paper raises

competency issues.  Id. at 16. Why would someone with responsibility for a

national program be excluded from discussions related to that very same program?

Further, the exclusion incident limited the Appellant's ability to be an effective

OCEFT senior manager because it augmented his isolation from the decision

making process regarding the national program, for which he was responsible.

ECF 24-3 at 17.  It also curtailed his opportunities to present in front of senior

executive staff and display his knowledge and abilities.  Id. at 16.

Further, on February 13, 2013, the Appellant had a discussion with his

supervisors Mr. Morrison and Barnett.  Mr. Morrison started the meeting by

producing an organizational chart and asking the Appellant where he thought he fit

in.  ECF 24-3 at 27.  The chart showed positions for all of Appellant's younger

employees, but his position was removed.  The Appellant replied that he did not fit

into the new structure and that they took away his position and responsibilities and

gave them to other OCEFT managers, all of whom were younger than the

Appellant.  ECF 24-3 at 27.  This was not the first time such an incident occurred.

23

ECF 24-3 at 20.  The same organizational charts were shown to Mr. Drielak on July 17, 2012.  Id. These acts constitute an "extraordinary reduction in responsibilities" and show that the Appellant "did not have responsibilities commensurate with [his] previous position," which is very similar to the scenarios in *Clay* and *Holcomb.*

Therefore, the District Court erred because it overlooked material facts and case law that show that the Appellant's job duties were significantly reduced, that he suffered through this job purgatory for many years, and it affected his opportunities for promotion.

Accordingly, the D.C. Circuit should reverse the decision and remand for further proceedings that take into consideration the foregoing facts and law.

## II.     The District Court Erred When It Found That The Appellant Had Not Made Out a Prima Facie Case of Retaliation Because The Defendants' 2014 Acts Were Not Caused By His Protected Activity

The District Court found that Mr. Drielak did not make out a *prima facie* case for retaliation because the alleged retaliatory acts, reassigning four of the Appellant's employees, occurred in 2014 and the protected activity occurred in 2012 and there was no direct evidence of retaliation.  ECF 32 at 18.  In the District Court's Memorandum Opinion, it rejects the Appellant's argument that the Appellant's supervisors received the full report of investigation ("ROI") from the

24

Appellant's EEOC investigation on January 30, 2014.  ECF 32 at 17.  The District Court also looks to the fact that Appellant told his immediate supervisor of his EEO complaint in September 2012 to come to the determination that there was a 15 month period between the alleged protected activity and the retaliatory acts. ECF 32 at 17.

Factually, the time period between the reassignment and the Appellant's protected activity is much shorter than 15 months.  The Appellant's supervisors did not take part in the EEO investigation until September, 2013.  ECF 24-4; ECF 24-5.  The EEO investigator took Mr. Barnett's affidavit on September 5, 2013 and Mr. Morrison's on September 6, 2013.  In his affidavit, Mr. Barnett admits that he was completely unaware of Appellant's harassment and or hostile work environment claims.  ECF 24-5 at 19-20.  Meaning, he had not even heard of these allegations until September 2013.  This is evidence that the Appellee had new reasons to take retaliatory actions starting on these dates.

Next, the decision to remove four of the Appellant's employees from his supervision was made on March 5, 2014.  ECF 24-8 at 5. This means that there was a six month gap between the protected activity and the retaliatory act.  This is a vastly shorter time period than the 15 month window that the Appellee argued should be the pertinent timeframe and the District Court accepted.

Further, in *Harris*, this Circuit found that a five month time frame coupled with additional factors was sufficient to show a causal connection between the plaintiff's protected activity and the defendant's conduct. *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015). The additional factors included plead facts that if taken as true, showed that the defendant's proffered reasons for their conduct were mere pretext. *Harris*, 791 F.3d at 70. Specifically, the plaintiff was fired and the defendant claimed that his position was abolished. However, the functions of the plaintiff's position continued to be performed. Id. at 69. Additionally, the plaintiff was "regularly commended for his work, and made numerous contributions to the improvement of the [defendant's] operations." Id. at 69. Therefore, this Circuit reasoned that the defendant's retaliatory acts were causally connected to the plaintiff's protected activity because of the five month proximity and the evidence that showed the defendant's proffered reasons for their retaliatory acts were mere pretext. Id. at 70.

Appellant's situation is similar to the scenario in *Harris*. Here, as explained above, there was a six month window between the protected activity and the retaliatory acts. Alone, this would not be enough to show causality. However, the Appellee's action, reassigning four agents that were under the Appellant's command, was mere pretext for retaliation. The reason given for the reassignment was that the Criminal Investigations Division ("CID") was understaffed. ECF 24-8

at 6.  However, the briefing paper to Assistant OCEFT Administrator Cynthia Giles explains that agents under the Appellant's command were already beginning to "take on casework as well."  ECF 24-11 at 3.  Casework meant criminal investigations which CID is responsible for.  Id.  Therefore, the agents under the Appellant's supervision were already performing duties of agents in CID.  Additionally, Mr. Barnett admits that although the four agents were going to be transferred to the CID full time, they still had ancillary duties, such as being members of the National Criminal Enforcement Response Team ("NCERT") supervised by the Appellant.  ECF 24-8 at 6.  Further, the briefing paper specifically states that "FOP and CID members of NCERT [have] assisted in executing more than 25 criminal search warrants in FY -11/12 in support of significant cases."  ECF 24-11 at 3.  Thus, the reasons for the reassignments were pretext because the FOP team members already performed criminal investigations.

Finally, Andrea Abat testified that the agents' duties did not substantially change because of the transfer. ECF 25-7.   In addition, she testified that Mr. Barnett told her that her duties would not substantially change.  The only changes would be who supervised Ms. Abat.  Id.

Technically, the factual scenario here is slightly different from *Harris*, but the same reasoning applies.  In *Harris*, the plaintiff's job duties were taken away and reassigned to another individual, here, agents under the Appellant's

supervision were reassigned to different supervisors despite the fact that those agents kept the same job duties. ECF 24-8 at 6; ECF 25-7. Ultimately, this evidence shows that the reassignments were mere pretext, just as the plaintiff in *Harris* showed that the defendant's reasons for her termination were mere pretext. Therefore, the EPA's reassignments were mere pretext so that they could move the agents from the Appellant's supervision in retaliation for his protected activity.

Therefore, the District Court erred when it ruled that Appellee's actions were not causally connected to the Appellant's protected activity because the Appellant has shown that there was a six month window in between the protected activity and the Appellee's retaliatory acts and the Appellee's reasons for the reassignment were mere pretext.

### III.   The District Court Erred In Finding That The Appellant Had Failed to Exhaust His Administrative Remedies Under Title VII.

The District Court found that Mr. Drielak failed to exhaust his administrative remedies for his 2010-2012 non-selections because he filed complaints on those claims more than 45 days after those events took place. The District Court rejected Appellant's arguments that he did not have a "reasonable suspicion" of age discrimination until August 2012 because it found Appellant had knowledge of the younger selected candidates, he had doubts about his 2011 PARS rating, and the "sheer quantity" of reported incidents necessitated such reasonable

28

suspicion. ECF 32 ("Memorandum Opinion") at 12. In this analysis, the District Court emphasized the Appellant's knowledge that he was repeatedly passed over for younger candidates. Id. at 12.

The Appellee somewhat similarly argued that Appellant did not exhaust his discrimination claims regarding the non-selections. However, Appellee ignored the Appellant's reasonable suspicion argument and primarily relied on *National R.R. Passenger Corp. v. Morgan* and its progeny that apply to "discrete acts," arguing that every non-selection and the 2011 PARS rating should have been brought to an EEO counselor within 45 days of those acts. ECF 22 ("Def.'s MSJ") at 11; *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Therefore, Appellant does not address the Appellee's case law regarding the non-selection failure to exhaust issue.

In addressing the Appellant's failure to exhaust his non-selections and 2011 PARS claims, the District Court looked to *Aceto v. England* and *Johnson v. Gonzales*. ECF 32 at 11; *Aceto v. England*, 328 F.Supp.2d 1, 7-8 (D.D.C. 2004); *Johnson v. Gonzales*, 479 F.Supp.2d 55, 57, 59 (D.D.C. 2007). These cases are inapposite.

In *Aceto*, the plaintiff contacted an EEO counselor 45 days after the date of an unlawful act. *Aceto v. England*, 328 F.Supp.2d 1, 7-8 (D.D.C. 2004). The plaintiff argued that his third count, that the defendant discriminated against him

29

by prohibiting the use of his personal handicapped parking card, should be equitably tolled because the plaintiff did not know, nor had he reason to know, that this was a prohibited act. *Aceto*, 328 F.Supp.2d at 7. The Court ruled otherwise, reasoning the plaintiff reasonably should have known that denying him the use of his handicapped parking card was discriminatory. Id. at 7. Further, the Court found that the plaintiff asserted that as early as November 1999, approximately six months before he contacted an EEO counselor, that he believed the defendant's denial of his use of the handicapped card was a discriminatory act. Id. at 7.

Additionally, in *Johnson v. Gonzales*, the plaintiff argued equitable tolling because he did not learn of racially charged comments that he believed affected his non-selection until 2003, approximately five years after the non-selection occurred. *Johnson v. Gonzales*, 479 F.Supp.2d 55, 57, 59 (D.D.C. 2007). The Court ruled against the plaintiff reasoning that the plaintiff had made statements to the EEOC that while he "suspected that Carter's negative influence played a role in the" non-selection, the plaintiff asserted he, "never had direct proof until the 2003 trial." Id. at 59. The Court reasoned that this admission was proof that the plaintiff had a reasonable suspicion that his 1998 non-selection was discriminatory.

Here, unlike in *Johnson* and *Aceto*, the Appellant's statements referring to a "pattern comprised of many instances" of age discrimination does not show that the Appellant believed, at the time of the non-selections, that he was discriminated

30

against on the basis of age. *See* ECF 32 at 11-12; *see also* ECF 24-3 at 8. The Appellant's comments, unlike the plaintiffs' comments in *Johnson* and *Aceto*, are completely devoid of any implication that during the 2010 and early 2012 time period believed that he was discriminated against on the basis of age. *See* ECF 24-3 at 8. Further, in the same passage that the District Court cites, the Appellant states that he was informed that other candidates who were approaching retirement age would not be supported by Mr. Morrison, the lead member of the position interview panel. Id. The Appellant asserts that learning this information helped form his suspicions that the non-selections were due to his age. *See* ECF 24-3 at 8.

Moreover, the District Court's reasoning that Appellant had a reasonable suspicion that he was discriminated against does not hold water. A jury could reasonably find that because all of the non-selections were done subtlety and insidiously, that the Appellant's further reflection caused his reasonable suspicion. It would be a different scenario if someone during the interview process had made ageist comments that would have triggered the Appellant's suspicions. That was not the case here.

Therefore, the District Court erred when it ruled that the Appellant had not administratively exhausted his 2012 non-selection and 2011 PARs claims. This Court should reverse the decision and remand for further proceedings that take into consideration the foregoing facts and law.

31

## <u>CONCLUSION</u>

For the foregoing reasons, the District Court's ruling was incorrect

and the judgment should be reversed and remanded for further proceedings.

**/s/**_____
MORRIS FISCHER
Attorney for STEVEN C. DRIELAK

32

## CERTIFICATE OF COMPLIANCE

The foregoing complies with the type-volume limitation of Fed. R. App. P. 32(g), because it contains 7,696 words.  The foregoing complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using the 2016 version of Microsoft Word in Times New Roman type style and was written using 14-point font for text.

*/s/ Morris E. Fischer*
Morris E. Fischer, Bar # 49804
Morris E. Fischer, LLC
1400 Spring Street, Suite 350
Telephone: (301) 328-7631
Facsimile: (301) 328-7638
morris@mfischerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Morris E. Fischer, hereby certify that on July 3, 2017, I electronically filed the foregoing APPELLANT'S BRIEF and CERTIFICATE of COMPLIANCE using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

BENTON G. PETERSON
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2534

*/s/ Morris E. Fischer*
Morris E. Fischer, Bar # 49804
Morris E. Fischer, LLC
1400 Spring Street, Suite 350
Telephone: (301) 328-7631
Facsimile: (301) 328-7638
morris@mfischerlaw.com

34